[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 6, 2009
THOMAS K. KAHN
CLERK

No. 08-11104
_____

D.C. Docket No. 07-01516-CV-AR-S

ELIZABETH PICARD,
THOMAS E. REYNOLDS,
as Trustee of the Bankruptcy Estate
of Elizabeth Picard,

Plaintiffs-Appellees-Cross-Appellants.

versus

CREDIT SOLUTIONS, INC.,

Defendant-Appellant-Cross-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(April 6, 2009)

Before EDMONDSON, Chief Judge, TJOFLAT, Circuit Judge and RYSKAMP,*
District Judge.

_____

* Honorable Kenneth L. Ryskamp, Senior United States District Judge for the Southern District
of Florida, sitting by designation.

PER CURIAM:

This appeal presents the question of whether claims brought pursuant to the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq*., are subject to arbitration. The district court held that the statute precludes arbitration. We disagree.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Credit Solutions, Inc., a/k/a Credit Solutions of America, Inc. ("CSA") is a debt settlement company that negotiates with unsecured creditors on behalf of its customers to lower the customers' debt loads and monthly payments. Facing unsecured credit card debt, Elizabeth Picard ("Picard")[1] contacted CSA via telephone on or about December 13, 2006 to discuss her debt load and a possible plan to manage her debt payments.

During the phone conversation, CSA representative Martin Englert ("Englert") represented to Picard that if she entered into an agreement for a debt management plan with CSA, CSA would negotiate settlements and reductions of her outstanding debts with her creditors. Englert proposed a structure whereby

---

[1] The district court substituted Thomas E. Reynolds, the trustee of Picard's bankruptcy estate, as the proper party plaintiff. Nevertheless, the district court treated Picard as if she were the plaintiff. Accordingly, this Court will use Picard's name for purposes of this opinion.

2

CSA would make direct withdrawals from Picard's bank account and make subsequent disbursements to creditors. Picard would pay for the service via direct withdrawals from her bank account. Picard entered into a contract with CSA via the Internet during her conversation with Englert.

In late January 2007, Picard began receiving telephone calls and letters from creditors telling her that she was in default on her accounts. Picard maintains that these defaults were due to CSA's failure to provide its promised services. Picard filed a Chapter 7 petition for bankruptcy in the United States Bankruptcy Court for the Northern District of Alabama. Picard then filed this action, alleging violations of CROA, breach of an oral contract and fraudulent inducement.

CSA moved to dismiss, or, in the alternative, to compel arbitration based on an arbitration clause in the customer enrollment package. The district court held an evidentiary hearing on the motion, at which time it received into evidence the audio recording of Picard's conversation with Englert. The district court held that CSA was a "credit repair organization" such that it was subject to CROA, and that CROA precludes arbitration, thereby rendering the arbitration clause void.

CSA appeals, arguing that CROA does not preclude arbitration and that the finding that it is a credit repair organization subject to CROA is premature. Picard brings a contingent cross-appeal, arguing that, in the event this Court reverses the

3

holding that CROA precludes arbitration, her fraud claim should be heard in a judicial forum.

The arbitration clause contained in the customer enrollment package reads as follows:

> If there is any dispute between the parties arising out of this agreement, the parties agree to submit the dispute to binding arbitration under the auspices of the American Arbitration Association (AAA). If such arbitration is held under the auspices of any other organization, the arbitration will be held in accord with AAA rules to the extent possible. Binding arbitration means that both parties give up their right to a trial by jury and to appeal except for a narrow range of issues that may be appealed under Texas law. Discovery may be limited by the arbitrator.

Picard initially maintained that the arbitration clause did not apply because she did not sign an agreement with CSA. Subsequent to the evidentiary hearing, however, and the presentation of the audio recording of her conversation with Englert, Picard argued that the arbitration clause was not applicable (1) because CROA voids the arbitration clause, and (2) because the agreement as a whole is void pursuant to the fraud in the factum doctrine.[2]

---

[2] The district court initially determined that CROA governs this case, ruling that CSA is a credit repair organization under CROA. Indeed, if CROA does not apply, the issue of whether CROA claims are arbitrable is moot. Accordingly, this Court assumes without deciding that CROA

4

## II.  STANDARD OF REVIEW

We review de novo the district court's decision that CROA claims are not arbitrable.  Jenkins v. First Am. Cash Advantage of Ga., LLC, 400 F.3d 868, 873 (11th Cir. 2005).

## III.  DISCUSSION

## A.    CROA DOES NOT CREATE A NONWAIVABLE RIGHT TO A JUDICIAL FORUM

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA requires a federal court in which a suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the action pending arbitration "upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement."  9 U.S.C. § 3.

The FAA creates a strong federal policy in favor of arbitration.  See Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1258 (11th Cir.

---

governs this case.

5

2003). The FAA "provides for 'the enforcement of arbitration agreements within the full reach of the Commerce Clause.'" Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 2040 (2003) (citing Perry v. Thomas, 482 U.S. 43, 490, 107 S.Ct. 2520, 2526 (1987)). Accordingly, courts "rigorously enforce" arbitration agreements. Klay v. All Defendants, 389 F.3d 1191, 1200 (11th Cir. 2004) (quoting Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 1242 (1985)). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652 (1991) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941 (1983)).

Where parties agree to arbitrate disputes brought pursuant to federal statute, the statutory claims are subject to arbitration "unless Congress has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Gilmer, 500 U.S. at 26, 111 S.Ct. at 1652 (1991)(quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 3354 (1985)). "Statutorily-created causes of action are no exception to the rule that arbitration agreements should be enforced according to their terms." Cunningham

6

v. Fleetwood Homes, 253 F.3d 611, 617 (11th Cir. 2001)(citing Mitsubishi, 473

U.S. at 626-27, 105 S.Ct. at 3354).

Courts review the statutory text, legislative history, and the purpose of the

statute in determining whether Congress intended to preclude arbitration:

> Like any statutory directive, the Arbitration Act's
> mandate may be overridden by a contrary congressional
> command. The burden is on the party opposing
> arbitration, however, to show that Congress intended to
> preclude a waiver of judicial remedies for the statutory
> rights at issue. If Congress did intend to limit or prohibit
> waiver of a judicial forum for a particular claim, such an
> intent will be deducible from [the statute's] text or
> legislative history, or from an inherent conflict between
> arbitration and the statute's underlying purposes.

Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226-27, 107 S.Ct.

2332, 2337-38 (1987)(alteration in original)(internal quotations and citations

omitted).

The district court concluded that Picard signed a contract containing an

arbitration clause with CSA in connection with a transaction involving interstate

commerce. The district court then concluded that CROA's disclosure provision

and non-waiver provision precluded arbitration under CROA.

The disclosure provision provides as follows:

(a) Disclosure required

7

Any credit repair organization shall provide any consumer with the following written statement before any contract or agreement between the consumer and the credit repair organization is executed[.]

15 U.S.C. § 1679c(a).  The provision lists the items that must be included in the written statement, which include, *inter alia*, notice of the right to a copy of one's credit report, notice of the right to dispute inaccurate information in a credit report, and notice of the right to cancel a contract with a credit repair organization for any reason within three business days from the date of execution.  For purposes of this case, the key element required in the written disclosure is as follows: "You have a right to sue a credit repair organization that violates the Credit Repair Organization Act.  This law prohibits deceptive practices by credit repair organizations."  Id.

The non-waiver provision provides as follows:

Any waiver by any consumer of any protection provided by or any right of the consumer under this subchapter–

(1) shall be treated as void; and

(2) may not be enforced by any Federal or State court or any other person.

15 U.S.C. § 1679f(a).

8

Whether CROA prohibits arbitration is an issue of first impression in this Court. The only circuit court decision on this issue is from the Third Circuit in Gay v. Creditinform, 511 F.3d 369 (3d Cir. 2007), which held that CROA claims are arbitrable. District courts have agreed. See Rex v. CSA-Credit Solutions of America, Inc., 507 F.Supp.2d 788 (W.D. Mich. 2007), Schriner v. Credit Advisors, Inc., No. 8:07CV78, 2007 WL 2904098 (D. Neb. Oct. 2, 2007), Vegter v. Forecast Fin. Corp., et al., No. 1:07-CV279, 2007 WL 4178947 (W.D. Mich. Nov. 20, 2007). But see Alexander v. U.S. Credit Mgmt., Inc., 384 F.Supp.2d 1003 (N.D. Tex. 2005).

The plaintiff in Gay made many of the same arguments that Picard makes here, all of which the Third Circuit rejected. Gay noted that CROA does not contain language creating a right to a judicial forum. 511 F.3d at 381. The title of the section containing the anti-waiver provision is "Noncompliance with this subchapter," which the Third Circuit likened to the "compliance" language in the non-waiver provisions of the Securities Act and Exchange Act. Id. at 385. Gay "therefore construe[d]…CROA's anti-waiver provision as only extending to rights premised on the imposition of statutory duties, absent contrary language in the statute." Id. Although CROA contemplates actions thereunder being brought in a judicial forum, such "is hardly surprising because ordinarily persons considering

9

themselves to have been wronged may seek judicial remedies." Id. at 382. Furthermore, Gay noted the absence of legislative history indicating an intent to preclude arbitration. Nor did plaintiff demonstrate a conflict between arbitration and the enforcement of CROA; the rights afforded by CROA will remain intact in an arbitration proceeding. Id. at 382 (citing Johnson v. W. Suburban Bank, 225 F.3d 366, 373 (3d Cir. 2000)).

The scope of the anti-waiver provisions in the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act") are instructive in the resolution of the CROA arbitrability question. The Exchange Act provides that "[t]he district courts of the United States… shall have exclusive jurisdiction of… all suits in equity and actions at law brought to enforce any liability or duty created by this chapter…." 15 U.S.C. § 78aa. The Exchange Act's non-waiver provision provides that "[a]ny condition, stipulation, or provision binding any person to waive compliance with any provision of [the Act]… shall be void." 15 U.S.C. § 78cc(a). In McMahon, 482 U.S. at 228, 107 S.Ct. at 2338, the Supreme Court held that, because the non-waiver provision only disallowed waivers of "compliance" with the Exchange Act, the Exchange Act only precluded waiver of its substantive requirements. An agreement to arbitrate was permissible under the statute because it would not waive compliance with any substantive

provision of the Exchange Act.  Id.; 107 S.Ct. at 2338.  Two years later, in

Rodriguez De Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 481-83,

109 S.Ct. 1917, 1920-21 (1989), the Supreme Court held that the non-waiver

language in the Securities Act also permitted arbitration.  The non-waiver

language at issue in the Securities Act was virtually identical to the language at

issue in the Exchange Act in that it extended to "compliance with any provision"

of the Securities Act.[3]  Id.; 15 U.S.C. § 77n.  Hence, waiver of the jurisdictional

provision did not constitute waiving "compliance" with the Act.  490 U.S. at 481-

83, 109 S.Ct. at 1920-21.

This Court agrees with Gay.  The text of CROA makes no mention of

arbitration.  The only right created in the disclosure provision is the right to a

statement containing certain disclosures.  The "right to sue" referenced in the

required disclosure is set forth separately in the civil liability section, 15 U.S.C. §

1679g(a), which does not mention the word "right," the expression "right to sue,"

or place any limitation on arbitration.  Although CROA requires credit repair

organizations to inform consumers of their right to a private cause of action, such

does not preclude arbitration under CROA.  "A statute's provision for a private

right of action alone is inadequate to show that Congress intended to prohibit

---

[3] The primary difference between the statutes is that the Securities Act includes a provision for concurrent jurisdiction in both state and federal courts, whereas the Exchange Act prescribes exclusive federal jurisdiction.  Id.

arbitration," however. <u>Davis v. S. Energy Homes, Inc.</u>, 305 F.3d 1268, 1274 (11th Cir. 2002)(quoting <u>Gilmer</u>, 500 U.S. at 29, 111 S.Ct. at 1653-54).

While the non-waiver provision in CROA is arguably phrased in broader terms than the non-waiver provisions in the Securities Act and the Exchange Act, CROA simply does not create a right to sue only in a judicial forum. The substantive rights created in CROA are entirely preserved in an arbitral forum. <u>Mitsubishi Motors</u>, 473 U.S. at 637, 105 S.Ct. at 3359 ("[S]o long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."). The CROA claims and the issue of whether CSA is a credit repair organization should be addressed in arbitration.

**B.    THIS COURT LACKS JURISDICTION TO DECIDE WHETHER THE FRAUD CLAIM SHOULD GO TO THE DISTRICT COURT OR THE ARBITRATOR**

Although Picard admits to signing the customer enrollment package, she maintains that the resulting contract is invalid because she did not know she was entering into a written contract. Picard brings an interlocutory contingent cross-appeal, claiming that her lack of knowledge negated her signatory power such that her challenge to the validity of the contract should be decided by a court rather than an arbitrator.

12

Prior to oral argument, this Court issued a jurisdictional question asking whether Picard has standing to bring her interlocutory contingent cross-appeal. Upon careful consideration of this matter, we conclude that we do not have jurisdiction to decide the cross-appeal.

Picard is the prevailing party in the district court. "Ordinarily, the prevailing party does not have standing to appeal because it is assumed that the judgment has caused that party no injury." Agripost, Inc. v. Miami-Dade County, ex rel. Manager, 195 F.3d 1225, 1230 (11th Cir. 1999) (citing Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 333, 100 S.Ct. 1166, 1171 (1980)). An exception to this rule exists where the prevailing party is prejudiced by the collateral estoppel effect of the district court's decision, but this exception does not apply here. Id. The decision from which Picard appeals is not a final judgment that could have a collateral estoppel effect on her fraud in the factum claim. The fraud in the factum argument is preserved for the arbitrator.

The portion of the district court's decision from which Picard cross-appeals is dicta that is unnecessary to support the district court's arbitration ruling. "A party may not appeal from the judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." Deposit Guar. Nat'l Bank, 445 U.S. at 335, 100 S.Ct. at 1172

13

(quoting <u>Electrical Fittings Corp. v. Thomas and Betts Co.</u>, 307 U.S. 241, 242, 59 S.Ct. 860, 861 (1939)). Picard is the prevailing party and was not aggrieved by the district court's dicta regarding her fraud in the factum argument.

### C. THE DISTRICT COURT'S DECISION THAT CSA IS A CREDIT REPAIR ORGANIZATIONS IS PREMATURE

Whereas the facts conclusively demonstrate that the appropriate forum for resolving this dispute is an arbitral forum, any other issues, such as whether CROA applies to CSA, are for the arbitrator. The district court's ruling on this issue was premature.

## IV. CONCLUSION

The district court erred in refusing to enforce the arbitration clause in the agreement and in finding that CSA is a credit repair organization. The judgment is vacated with instructions to refer plaintiff's claim to arbitration.

**VACATED AND REMANDED.**