TASHIMA, Circuit Judge,
dissenting:
Because I disagree with the majority’s conclusion that Congress intended to preclude a waiver of a judicial forum for claims under the Credit Repair Organizations Act (“CROA”), I respectfully dissent.
As the majority acknowledges, Congress has manifested “a liberal federal policy favoring arbitration agreements.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Under the Federal Arbitration Act, courts should enforce arbitration agreements involving statutory claims “ ‘unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.’ ” Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)). Congress’ intent to preclude a waiver of judicial remedies must be shown by the statute’s text, its legislative history, or an inherent conflict between arbitration and the statute’s underlying purpose. Id. Plaintiffs bear the burden of showing that Congress intended to preclude a waiver of a judicial forum for CROA claims. See Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (“The burden is on the party opposing arbitration ... to show that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.”).
The majority concludes that the plain language of 15 U.S.C. § 1679c(a) provides consumers with the “right to sue,” that the right to sue implies a judicial forum, and that 15 U.S.C. § 1679f prohibits any waiver of this right. (Maj. Op. at 1208.) I submit, however, that the plain language of § 1679c(a) does not confer this right upon consumers, and neither the CROA nor its legislative history shows that Congress intended to preclude a waiver of judicial remedies.
All that § 1679c(a) requires is that a credit repair organization provide consumers with the following written disclosure:
*1215 You have a right to dispute inaccurate information in your credit report---You have a right to obtain a copy of your credit report....
You have a right to sue a credit repair organization that violates the Credit Repair Organization Act. This law prohibits deceptive practices by credit repair organizations.
You have the right to cancel your contract with any credit repair organization for any reason within 3 business days from the date you signed it.
15 U.S.C. § 1679c(a). This section does not purport to create any substantive rights, including the right to sue. Rather, its sole purpose is to set forth a disclosure statement to be communicated verbatim to consumers.
Each of the rights referred to in § 1679e(a) is separately conferred within Chapter 41 of Title 15, thus indicating that Congress included § 1679c(a) to advise consumers of relevant rights provided for elsewhere in the CROA. See Rex v. CSA-Credit Solutions of America, Inc., 507 F.Supp.2d 788, 798-99 (W.D.Mich.2007) (“The inclusion of separate sections actually providing the substantive rights indicates that the language in the disclosures in § 1679c does not create any rights. Rather, the language in § 1679c only sets forth the phrasing that is to be used in advising consumers of their rights under other sections of Chapter 41 of Title 15.”). For example, 15 U.S.C. § 1681i provides a consumer with the right to dispute inaccurate information in his credit report, 15 U.S.C. § 1681j provides a consumer with the right to obtain a copy of his credit report, and 15 U.S.C. § 1679e(a) provides a consumer with the right to cancel a contract with a credit repair organization within three business days. See Rex, 507 F.Supp.2d at 799 n. 5.
The “right to sue” listed in § 1679c(a) is provided for in 15 U.S.C. § 1679g, which establishes civil liability for violations of the CROA. Because § 1679g provides for civil liability, a consumer ordinarily has the “right to sue” a credit repair organization which violates the CROA. Nowhere in the CROA, however, does Congress mandate a judicial forum for enforcement of the CROA’s substantive provisions. The disclosure language in § 1679c(a), while recognizing a right to sue, does not itself confer that right. See Gay v. CreditInform, 511 F.3d 369, 381-82 (3d Cir.2007) (“Although the statutes clearly contemplate consumers’ actions being brought in a judicial forum ... and to that extent may be said to recognize a consumer’s right to proceed in court, they neither contain provisions creating such rights nor indicate that Congress ... intended to exclude claims asserted under the CROA ... from arbitration agreements.”). Because § 1679c(a) does not establish any rights, but only requires credit repair organizations to make a written disclosure to consumers, the disclosure statement’s mention of a “right to sue” cannot be the basis of a non-waivable right under 15 U.S.C. § 1679f.
In addition, 15 U.S.C. § 1679f indicates that Congress intended that CROA claims to be enforceable outside a judicial forum. It provides that “[a]ny waiver ... of any protection ... or any right ... under this subchapter ... may not be enforced by any Federal or State court or any other person.” 15 U.S.C. § 1679f(a) (emphasis added). By including “or any other person” in the same sentence that lists Federal and State courts as appropriate fora for CROA claims, Congress clearly indicated that arbitrators, mediators, and other third parties may decide CROA claims. This language indicates that Congress contemplated a role for arbitrators in enforcing CROA claims. On the other hand, the *1216 majority’s suggestion that the references to “the court” in § 1679g support a right to sue in court, does not overcome the “liberal federal policy favoring arbitration agreements.” Moses H. Cone Mem’l Hosp., 460 U.S. at 24, 103 S.Ct. 927. Such language merely indicates Congress’ expectation that the question of civil liability will normally be resolved in a judicial forum. It does not confer a non-waivable right to a judicial forum.
Finally, the mere mention of a “right to sue” does not necessarily mean the right to sue in court, especially given the lack of other statutory language supporting this interpretation. The only other circuits to have ruled on this issue are in agreement. See Picard v. Credit Solutions, Inc., 564 F.3d 1249, 1255 (11th Cir.2009) (“Although CROA requires credit repair organizations to inform consumers of their right to a private cause of action, such does not preclude arbitration under CROA”); Gay, 511 F.3d at 377 n. 4 (“[15 U.S.C. § 1679c(a) ] does not specify the forum for the resolution of the dispute and therefore does not support [the] argument that the CROA provides a consumer with the right to bring suit in a judicial, rather than an arbitral, forum for CROA violations.”). We should not lightly create a circuit split on an issue of national application on the basis of the flimsy evidence on which the majority relies. See Maniar v. Fed. Deposit Ins. Corp., 979 F.2d 782, 785 (9th Cir.1992) (“[Ujniformity among the circuits in matters having general application to the various states is preferable as long as individual justice is not sacrificed.”). We should be “hesitant to create such a split, and we should do so only after the most painstaking inquiry” and only if required by the “unambiguously expressed intent of Congress.” Zimmerman v. Dep’t of Justice, 170 F.3d 1169, 1183-84 (9th Cir.1999).
The majority does not even address whether the legislative history of the CROA or any inherent conflict between arbitration and the statute’s underlying purpose may form a basis for prohibiting waiver of the judicial forum. Nothing cited by Plaintiffs suggests that Congress actually considered the issue of arbitrability of CROA claims, and the legislative history does not establish that Congress intended CROA claims to be non-arbitrable. See Rex, 507 F.Supp.2d at 800 (“In the absence of any discussion of arbitration in the legislative history, the legislative history cannot provide a basis for the Court to conclude that Congress intended claims under the CROA to be nonarbitrable.”). In addition, there is no inherent conflict between arbitration and CROA’s underlying purpose because Plaintiffs may enforce their rights under the substantive provisions of CROA even if compelled to arbitrate. See Mitsubishi Motors Corp., 473 U.S. at 628, 105 S.Ct. 3346 (“By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.”).
Because neither the plain text of the statute, its legislative history, nor any inherent conflict between the purpose of CROA and arbitration shows that Congress intended to preclude a waiver of judicial remedies, I would reverse the district court’s order and remand with instructions to compel arbitration.