**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

KEVIN STOUT, on behalf of himself and all others similarly situated,
*Plaintiff-Appellant*,

v.

FREESCORE, LLC, DBA FreeScore.com,
*Defendant-Appellee*.

No. 10-56887

D.C. No.
2:10-cv-04395-
R-OP

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted
August 26, 2013—Pasadena, California

Filed February 21, 2014

Before: Diarmuid F. O'Scannlain and Morgan Christen,
Circuit Judges, and Brian M. Cogan, District Judge.[*]

Opinion by Judge Cogan

---

[*] The Honorable Brian M. Cogan, U.S. District Judge for the Eastern District of New York, Brooklyn, sitting by designation.

# SUMMARY[**]

## Credit Repair Organizations Act

Reversing the dismissal of a putative class action for failure to state a claim, the panel held that the defendant was a "credit repair organization" for purposes of the Credit Repair Organizations Act because, through the representations it made on its website and in its television advertising, it offered a service, in return for the payment of money, for the implied purpose of providing advice or assistance to consumers with regard to improving their credit record, credit history, or credit rating.

## COUNSEL

Aaron D. Radbil (argued), Weisberg & Meyers LLC, Cooper City, Florida; Todd M. Friedman, Law Offices of Todd M. Friedman, P.C., Beverly Hills, California, for Plaintiff-Appellant.

Darrel J. Hieber (argued), Jason D. Russell, and Jennifer E. LaGrange, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, for Defendant-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

COGAN, District Judge:

Kevin Stout appeals the dismissal of his putative class action against FreeScore, LLC ("FreeScore"), under the Credit Repair Organizations Act, 15 U.S.C. § 1679, *et seq.* ("CROA"). In dismissing Stout's claim, the district court concluded that FreeScore is not a "credit repair organization" as defined in the CROA. We hold that FreeScore is a "credit repair organization" for purposes of the CROA, because Freescore, through the representations it made on its website and in its television advertising, offered a service, in return for the payment of money, for the implied purpose of providing advice or assistance to consumers with regard to improving the consumer's credit record, credit history, or credit rating. We therefore reverse the judgment of the district court and remand for further proceedings.

**I**

FreeScore is an online "provider of credit scores, reports and consumer credit information." Its website, FreeScore.com, reads, in part:

> Are you in a financial hole? Want to keep from falling into one?
>
> **See your *Credit* Report *& FREE Credit Scores* online today and start your climb to financial freedom.**
>
> A bruised Credit Report and battered Credit Scores can harm you more than you think.

They can wind up costing you a loan, thousands more in undeserved high interest rates or even a job!

Now more than ever, you need to ensure your Credit Report is clean. Lending standards are extremely strict. Poor Credit Scores and a damaged Credit Report could put your dreams of home ownership, a new car or even a new career on hold today – and haunt you for years to come.

You can't afford to bury your head in the dirt when it comes to your credit any longer.

\*     \*     \*

During your *FreeScore* FREE Trial, get unlimited online access to your 3-in-1 Triple Bureau Credit Report and Free Credit Scores to see what lenders see!

Get your complete credit picture with a 3-in-1 Credit Report:

- **See your Free Credit Report** featuring all 3 major credit-reporting bureaus – TransUnion, Equifax and Experian – merged into one easy-to-read Credit Report.

- View your **Credit Reports organized side-by-side** for quick comparison.

- **Spot damaging inaccuracies** on your Free Credit Report at a glance so you can quickly address incorrect information dragging down your Credit Scores.

- **Get your Scores** to negotiate your best mortgage, auto and loan interest rates.

- **BONUS:** Receive newly **updated Credit Scores and Report every 30 days!**

  Plus, easily manage and secure your credit with *FreeScore's* Triple Bureau Credit Monitoring.

- We keep an eye on your Credit Reports at all three bureaus 24/7 so you don't have to.

- **Instant email alerts** notify you when critical changes appear on your Credit Report so you can make corrections fast!

A 60-second television commercial for FreeScore.com, featuring the actor and commentator Ben Stein, announces:

Think about it. If you are buried up to your neck in debt it can feel like creditors are trying to whack you on the head . . . Ouch . . . .

Whether you are in a financial hole or just want to get a loan, a better interest rate, or a

> new job, you're at the mercy of your credit scores.

> Look, you can't fix errors on your credit report if you haven't seen it, that's why I went to FreeScore.com and found out my score for free.

> I'm practically giddy with excitement. FreeScore.com gives me unlimited access to the three major credit reports and scores. FreeScore.com even sends me an alert when there's any change to my credit report.

> Remember, knowing your credit score could be the difference between being down there, and being up here. Get your credit score today at FreeScore.com.

> Life costs more without FreeScore. FreeScore.com.

Additionally, FreeScore.com, referencing standardized credit scores calculated using a proprietary formula administered by the Fair Isaac Credit Organization – commonly referred to as FICO® scores – states the following:

> The Fair Isaac Credit Organization (FICO®) score is the industry standard for determining a consumer's credit rating. Lenders and others use the FICO® credit score standard to judge a person's credit record, using a

complex algorithm that involves several factors.

There are five basic factors that a FICO® credit score calculator takes into account when measuring your credit history.

- Your past payment practices. FICO® evaluates how you've paid previous lenders, including those offering payment plans on an ongoing basis.

- Your outstanding debts. A FICO® algorithm also considers what you currently owe against maximum credit amounts on your current lines of credit, if any.

- Your history. Another aspect of FICO® calculations is how long you've had credit. For each credit line, the longer you've had the line of credit, the more a FICO® algorithm can decipher about your payment history. A younger person will have less credit data and credit history to learn from, as will someone without ongoing credit accounts.

- Your recent activity. A FICO® credit score calculator also looks at what you've attempted to do, credit-wise, to determine how your credit-seeking activity matches your payments history. This relationship

> forms part of the FICO® index of calculations.

> •   Credit categories.  FICO® also evaluates what kind of credit a person has dealt with or holds, including home-related credit (e.g., mortgages, home equity lines of credit), auto loans, utilities, or other forms of credit situations.

> These criteria form the basis for a FICO® score, but all scores are determined on a case-by-case basis.  So how can you deal with or improve a FICO® score?  It's a long process that starts with knowing more about all the details of your overall financial situation. Many people take years to micromanage their accounts, attempting to repair a damaged credit score, and many find that the best solution is preventative credit maintenance.

> Learning to manage your credit starts with *getting informed about your credit*.  That means utilizing services like credit monitoring to find out what may be changing in your credit history report; those changes can have an immediate effect in your credit score.

In order to receive any service offered by FreeScore, a consumer must first authorize a charge or debit from an approved banking account, and agree to FreeScore's "Offer Details," "Terms and Conditions," and "Privacy Policy." There is an initial upfront fee that is required, after which the consumer is charged a monthly fee of $29.95 at the beginning

of each membership month. FreeScore may "increase or decrease the membership fee for each renewal membership term, or add new fees and changes."

On April 28, 2010, Stout subscribed to services offered by FreeScore and initially enrolled at FreeScore.com for a free 7-day trial period. In order to enroll for membership, Stout was required to authorize FreeScore to debit his account at the monthly membership rate of $29.95.

The fine print at the bottom of the enrollment page in effect during Stout's transaction stated as follows:

> *FreeScore* provides you with the tools you need to access and monitor your financial/credit information through the program's credit reporting and monitoring benefits. *FreeScore* and its benefit providers are not credit repair service providers and do not receive fees for such services, nor are they credit clinics, credit repair or credit services organizations or businesses, as defined by federal and state law.

The enrollment page also enumerated the benefits of a FreeScore membership, which include: "UNLIMITED Access to your Credit Scores from all 3 Bureaus," "Automatic Credit Monitoring and Alerts from All 3 Bureaus," and "Complete Financial Public Records Information, as Contained Within Your Credit Reports." The webpage also explained that a consumer should know his credit score because "Knowing All 3 Credit Scores Gives You the Power to Negotiate the Best Rates Possible."

On June 15, 2010, Stout filed his four-count putative class action complaint against FreeScore, alleging violations of the CROA. Stout alleged that FreeScore utilized its website and a commercial featuring Ben Stein to advertise its services and represent that it can or will sell, provide, or perform a service providing advice or assistance in connection with an individual's credit. Moreover, Stout alleged that FreeScore used social networking websites such as Facebook and LinkedIn to promote its services; its Facebook profile featured the motto: "FreeScore.com. Life costs more without FreeScore . . . ," and on both Facebook and LinkedIn, FreeScore described itself as "a leading provider of credit scores, reports and consumer credit information."

Furthermore, Stout alleged that FreeScore is a "credit repair organization" as defined by the CROA because a person need only *represent* that it will sell or can sell, provide, or perform a service providing advice or assistance in connection with an individual's credit to fall within that definition. Moreover, Stout argued that a disclaimer, as a matter of law, does not automatically exonerate deceptive activities. Finally, Stout asserted four claims for failure to comply with the CROA's requirements and allegedly making misleading statements. FreeScore moved to dismiss the complaint on August 27, 2010, while Stout moved for class certification on October 6, 2010.

The district court heard both motions and orally granted FreeScore's motion to dismiss. Several days later, it entered a written Order granting FreeScore's motion to dismiss with prejudice for failure to state a claim, while denying Stout's motion for class certification as moot. The district court reasoned that FreeScore was not a "credit repair organization" under the statute because "Defendant did not make any

promises of credit improvement.  Rather, it merely promises to provide a consumer with his or her credit score; it is up to the consumer to improve it."  The court also concluded that the term "any person" in the statute cannot be used to expand the statute's coverage beyond the credit repair context.  Stout timely appealed.

## II

This Court reviews *de novo* a district court's decision to grant defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *Fayer v. Vaughn*, 649 F.3d 1061, 1063–64 (9th Cir. 2011).

## III

### A

In interpreting a statute, we begin with its plain language. *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1171 (9th Cir. 2011).  We consider "not only the specific provisions at issue, but also the structure of the statute as a whole, including its object and policy."  *Id.* (quoting *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999)).  "When the plain meaning of a statutory provision is unambiguous, that meaning is controlling."  *Id.*  (quoting *Belshe*, 188 F.3d at 1096).  In enacting the Consumer Credit Protection Act, of which the CROA is a part, Congress intended for courts to broadly construe its provisions in accordance with its remedial purpose.  *See Brothers v. First Leasing*, 724 F.2d 789, 793 (9th Cir. 1984).

Section 1679a(3) of the CROA defines a credit repair organization as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of –
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3). Congress also made the following findings:

> (1) Consumers have a vital interest in establishing and maintaining their credit worthiness and credit standing in order to obtain and use credit. As a result, consumers who have experienced credit problems may seek assistance from credit repair organizations which offer to improve the credit standing of such consumers.
>
> (2) Certain advertising and business practices of some companies engaged in the business of credit repair services have worked a financial hardship upon consumers, particularly those

of limited economic means and who are inexperienced in credit matters.

15 U.S.C. § 1679(a). In addition, the statute explains that the purposes of this subchapter are:

> (1) To ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purchase of such services; and

> (2) To protect the public from unfair or deceptive advertising and business practices by credit repair organizations.

15 U.S.C. § 1679(b).

FreeScore falls squarely within the CROA's definition of a "credit repair organization." From the plain language of the statute, it is clear that under the CROA, a person need not actually provide credit repair services to fall within the statutory definition of a credit repair organization. Instead, the person need only *represent* that it can or will sell, provide, or perform a service for the purpose of providing advice or assistance to a consumer with regard to improving a consumer's credit record, credit history, or credit rating. 15 U.S.C. § 1679a(3)(A); *see also Rice v. Greenhaven Grp., LLC*, No. 10-3830 (RHK/JJK), 2011 WL 43481, at *3 (D. Minn. Jan. 6, 2011) ("[W]hether or not Plaintiffs pleaded that Greenhaven actually *did* provide such advice or services is immaterial, despite Defendants' suggestion to the contrary, because CROA also applies to '*represent[ing]* that such person can or will sell, provide, or perform' the covered

services."); *Greene v. CCDN, LLC*, 853 F. Supp. 2d 739, 752 (N.D. Ill. 2011) ("A person need not actually attempt to improve a consumer's credit record, history, or rating in order to meet the statutory definition. Instead, an organization need only 'represent' that it can or will provide these services.") (quoting 15 U.S.C. § 1679a(3)(A)).

FreeScore's website advertisements and TV commercial represent that it provides a service for the purpose of assisting a consumer in improving the consumer's credit record, history or rating. In interpreting such advertisements, a court must look to the "overall net impression" of the subject advertisement to determine what message a viewer may reasonably ascribe to it. *FTC v. Gill*, 265 F.3d 944, 956 (9th Cir. 2001) (internal quotation marks omitted).

FreeScore does more than merely provide credit reports. It advertises on its website that it provides a "merged" "easy-to-read Credit Report" which allows consumers to "[s]pot damaging inaccuracies on [their] Free Credit Report at a glance so [they] can quickly address incorrect information dragging down [their] Credit Scores," that it will "keep an eye on [consumers'] Credit Reports at all three bureaus 24/7 so [they] don't have to," and that "[i]nstant email alerts notify you when critical changes appear on your Credit Report so you can make corrections fast!" Ben Stein states in FreeScore's television commercial, "FreeScore.com even sends me an alert when there's any change to my credit report." FreeScore clearly states that the express purpose of credit monitoring, through services such as email alerts, is so that steps may be taken to improve credit: "Learning to manage your credit starts with *getting informed about your credit*."

FreeScore affirmatively represents that its services can or will improve, or help to improve, a consumer's credit record, history, or rating. On its FICO information page, FreeScore clearly asks, "So how can you deal with or *improve a FICO® score?*" (emphasis added). The page continues, "Many people take years to micromanage their accounts, *attempting to repair a damaged credit score*, and many find that the best solution is preventative credit maintenance." (emphasis added). The page concludes, "Learning to manage your credit starts with *getting informed about your credit*. That means utilizing services like credit monitoring to find out what may be changing in your credit history report; *those changes can have an immediate effect on your credit score*." (emphasis added). Accordingly, FreeScore represents both explicitly and implicitly that its services can improve or assist in improving a consumer's credit record, history, or rating.[1]

Furthermore, FreeScore offers services aimed at improving future creditworthy behavior with prospective promises of improved credit. It advertises on FreeScore.com that consumers must "ensure [their] Credit Report is clean," "[s]pot damaging inaccuracies" on their credit reports, and "start [their] climb to financial freedom" by utilizing the services it offers. Its television commercial advertises that consumers who use FreeScore will be able to "fix errors on [their] credit report," and that credit scores can determine

---

[1] The fact that FreeScore has a self-serving disclaimer that it is not a credit repair organization does not cure the representations it made that it offers services that could improve a consumer's credit. *See Zimmerman v. Puccio*, 613 F.3d 60, 72 (1st Cir. 2010) (holding that defendants cannot advertise that it would help improve clients' credit ratings, but escape liability under CROA by inserting a disclaimer in its contract about the relevance of its services to the credit rating of its clients).

whether consumers can "get a loan, a better interest rate, or a new job."

FreeScore views its services differently, maintaining that it only made representations that it could provide information regarding a consumer's credit, and not that it could "improve" a consumer's credit. However, FreeScore's advertisements clearly go beyond merely providing information about one's credit. FreeScore even goes so far to recommend a course of action to consumers, as its advertisements tell consumers to use FreeScore.com to "[s]pot damaging inaccuracies," and use "[i]nstant email alerts" which notify them when "critical changes appear on [their] Credit Report so [they] can make corrections fast!" It is therefore not just the data that FreeScore is selling; it is advice to the consumer on what the consumer can or should do with that data. The overall net impression communicated by FreeScore.com is that in order to "repair a damaged credit score," the "best solution" is to "utilize[e] services like credit monitoring," which "can have an immediate effect on your credit score."

Our conclusion that FreeScore is a "credit repair organization" under CROA is consistent with decisions in other courts. In *In re National Credit Management Group, LLC*, 21 F. Supp. 2d 424 (D. N.J. 1998), the court concluded that while the defendant did not actually provide credit repair services as contemplated by CROA, it was nonetheless a credit repair organization because it represented that it would "provide consumers with a personal credit analysis by a trained credit analyst who '*will provide [them] with information with respect to [their] profile* so that [they] may attempt *to establish and/or re-establish [their] credit.*'" *Id.* at 457 (emphasis in original). Similarly, FreeScore, while not actually providing credit repair services, has represented that

it can or will sell, provide, or perform a service for the purpose of providing advice or assistance to a consumer with regard to improving a consumer's credit record, history, or rating.

Similarly, in *Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010), the First Circuit concluded that services or "credit counseling aimed at improving future creditworthy behavior is the quintessential credit repair service." *Id.* at 72. The Court held that, "[t]he language of the Act does not bind the concept of an improved credit record, credit history, or credit rating to the literal alteration ('repair') of an historical record, history, or rating." *Id.*; *see also Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539, 547 (D. Md. 2005) ("While perhaps aimed primarily at pure credit repair organizations, the scope of [the CROA's] language also makes it clearly extendible, under appropriate circumstances, to [credit counseling agencies]. If the language of the Act reaches too far, it is for Congress—not the Court—to take corrective action."). The defendant in *Zimmerman*, which was held to constitute a "credit repair organization" under CROA, stated that its program would "restore your credit rating," "improve your credit," and it was "designed to help you get out of debt and *improve* your credit rating." *Zimmerman*, 613 F.3d at 72. These promises are strikingly similar to those advertised by FreeScore, *e.g.*, FreeScore.com will help consumers "[s]pot damaging inaccuracies" on their credit reports to "ensure [their] Credit Report is clean," and help consumers "start [their] climb to financial freedom."

Finally, in *Helms v. Consumerinfo.com, Inc.*, 436 F. Supp. 2d 1220, 1224–26 (N.D. Ala. 2005), the court concluded that a company offering educational information only such as

credit reports, credit scores, and credit monitoring was a credit repair organization.  While *Helms* involved explicit representations by the defendant that its services would improve consumers' credit, FreeScore similarly gives the net overall impression that its services would do just that. Among the messages that FreeScore communicates is the representation that in order to "repair a damaged credit score," the "best solution" is to "utiliz[e] services like credit monitoring," which "can have an immediate effect on your credit score," and that doing so would "improv[e]" consumers' FICO® scores.

FreeScore points to two other decisions to argue that the definition of "credit repair organization" does not encompass entities that provide credit information so consumers can improve their own credit.  *See Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006); *Plattner v. Edge Solutions, Inc.*, 422 F. Supp. 2d 969 (N.D. Ill. 2006). We believe that the plain language of the CROA is at odds with those decisions.  *See, e.g.*, *Zimmerman*, 613 F.3d at 72 n.14 ("The theory put forward by the district court in *Hillis* appears to be an outlier."); *Reynolds v. Credit Solutions, Inc.*, 541 F. Supp. 2d 1248, 1255 (N.D. Al. 2008), *vacated on other grounds Picard v. Credit Solutions, Inc.*, 564 F.3d 1249 (11th Cir. 2009) ("This court respectfully declines to follow whatever relevant guidance is offered by *Plattner* and *Hillis* because they both stray from the plain language of CROA.").

**B**

Finally, the parties dispute whether Stout sufficiently alleged that FreeScore violated provisions of the CROA.  The appropriate forum to consider this issue is the district court. *See Ecological Rights Found. v. Pac. Lumber Co.*, 230 F.3d

1141, 1154 (9th Cir. 2000) (recognizing this Court may affirm on any basis supported by the record, but "[w]hen the efficiency interest no longer obtains because the case will have to be remanded in any event, there is no reason to forego the usual preference for prior trial court considerations of all issues in a case.").

## IV

For the foregoing reasons, we REVERSE the district court's Order granting FreeScore's motion to dismiss Stout's class action complaint and REMAND the case to the district court for further proceedings.

**REVERSED AND REMANDED.**