**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NICK COONS; and ERIC N. NOVACK, M.D., | No. 13-15324 |
| *Plaintiffs-Appellants*, | D.C. No. 2:10-cv-01714-GMS |
| v. | |
| JACOB L. LEW, in his official capacity as Secretary of the United States Department of the Treasury; KATHLEEN SEBELIUS, in her official capacity as Secretary of the United States Department of Health and Human Services; ERIC H. HOLDER, JR., Attorney General, in his official capacity as Attorney General of the United States; and BARACK HUSSEIN OBAMA, in his official capacity as President of the United States, | ORDER AND AMENDED OPINION |
| *Defendants-Appellees*. | |

Appeal from the United States District Court
for the District of Arizona
G. Murray Snow, District Judge, Presiding

Argued and Submitted
June 10, 2014—San Francisco, California

Filed August 7, 2014
Amended September 2, 2014

Before: Mary M. Schroeder, Susan P. Graber,
and Jay S. Bybee, Circuit Judges.

Opinion by Judge Graber

## SUMMARY[*]

### Patient Protection and Affordable Care Act

The panel affirmed in part and vacated in part the district court's judgment in favor of federal officials in a case brought by two Arizona citizens alleging a facial constitutional challenge to two provisions of the Patient Protection and Affordable Care Act, and seeking a declaration concerning the Arizona Health Care Freedom Act.

The panel affirmed the district court's holding that the Affordable Care Act's individual mandate, which requires that individuals maintain a minimum level of health insurance coverage or pay a penalty, did not violate a plaintiff's substantive due process right to medical autonomy. The panel also affirmed the dismissal, for lack of ripeness, of a plaintiff's challenge to the individual mandate for a violation of his substantive due process rights to informational privacy. The panel also affirmed the district court's holding that the Affordable Care Act preempted the Arizona Health Care Freedom Act, which amended the Arizona constitution to make it lawful to abstain from purchasing health insurance without paying any penalty. Finally, with respect to a

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

plaintiff's challenge to the Independent Payment Advisory Board, which is a new advisory board charged with issuing budget recommendations for the Medicare program in the event that the program exceeded growth projections, the panel vacated the district court's decision on the merits and remanded with instructions to dismiss for lack of jurisdiction.

**COUNSEL**

Christina Sandefur (argued), Clint Bolick, Kurt Altman, and Nicholas C. Dranias, Goldwater Institute, Phoenix, Arizona, for Plaintiffs-Appellants.

Jeffrey E. Sandberg (argued), Dana Kaersvang, and Alisa B. Klein, Attorneys, John S. Leonardo, United States Attorney, and Stuart F. Delery, Acting Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Timothy Sandefur, Pacific Legal Foundation, Sacramento, California, for Amici Curiae.

**ORDER**

The opinion filed on August 7, 2014, and published at 2014 WL 3866475, is amended by the opinion filed concurrently with this order, as follows:

On slip opinion page 7, second paragraph, lines 5 and 6, change "Medicare" to "Medicaid".

The time for filing petitions for panel rehearing and for rehearing en banc shall remain the same from the August 7, 2014, original filed date of the opinion.

**OPINION**

GRABER, Circuit Judge:

Plaintiffs Nick Coons and Eric N. Novack brought a facial constitutional challenge to two provisions of the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), *as amended by* Health Care and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 ("Affordable Care Act"): the individual mandate, which requires that individuals maintain a minimum level of health insurance coverage or pay a penalty; and the establishment of the Independent Payment Advisory Board ("IPAB"), a new advisory board charged with issuing budget recommendations for the Medicare program in the event that the program exceeds growth projections. Plaintiffs also sought a declaration that the Arizona Health Care Freedom Act ("Arizona Act"), which amends the Arizona constitution to make it lawful to abstain from purchasing health insurance without paying any penalty, is not preempted by the Affordable Care Act. After the Supreme Court issued *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012), the district court dismissed Plaintiffs' claims and entered judgment for Defendants Timothy Geithner, Kathleen Sebelius, Eric Holder, Jr., and Barack Hussein Obama, in their official capacities. Reviewing de novo, *Stout v. FreeScore, LLC*, 743 F.3d 680, 684 (9th Cir. 2014); *Demers v. Austin*, 746 F.3d 402, 409 (9th Cir. 2014),

we affirm in part, and in part vacate and remand with instructions to dismiss for lack of jurisdiction.

## BACKGROUND

In March 2010, Congress passed and the President signed into law the Affordable Care Act. The Act establishes a comprehensive regulatory system intended to increase the number of Americans covered by medical insurance and to decrease the cost of medical care. Two of its provisions are at issue in this appeal: the provision commonly known as the individual mandate, 26 U.S.C. § 5000A; and the provision establishing IPAB, 42 U.S.C. § 1395kkk.

The individual mandate is codified in Title 26 of the Internal Revenue Code. 26 U.S.C. § 5000A. The mandate requires all "applicable individuals," *id.* § 5000A(d), and their dependents to maintain "minimum essential coverage," *id.* § 5000A(f), for every month beginning in January 2014, *id.* § 5000A(a). If an individual fails to meet that requirement and does not qualify for an exemption, *id.* § 5000A(e), the individual must pay a penalty, termed the "shared responsibility payment," with his or her annual income tax return, *id.* § 5000A(b).

IPAB is a new 15-member administrative board that will monitor the growth of Medicare spending and, if actual growth exceeds projected growth, will develop and submit recommendations to reduce the growth rate to the "savings target" set by the Chief Actuary of the Centers for Medicare & Medicaid Services. 42 U.S.C. § 1395kkk. The requirement that IPAB issue recommendations for a given year is triggered only if the Chief Actuary determines that actual growth will exceed projected growth in a particular

year. *Id.* § 1395kkk(b). If the Chief Actuary makes that determination, then IPAB is required to recommend measures to reduce growth that the Secretary of Health and Human Services ("Secretary") must implement in the absence of an affirmative veto by Congress.[1] *Id.* If IPAB fails to make the required recommendations for a given year, for lack of membership or otherwise, its duties fall to the Secretary. *Id.* § 1395kkk(c)(5). Once IPAB completes its recommendations, it must submit them to Congress and the President. *Id.* § 1395kkk(c)(3). If instead the Secretary completes the recommendations, the Secretary must submit them to the President, who must in turn submit the proposal to Congress within two days. *Id.* § 1395kkk(c)(4)–(5). The scheme then provides, through congressional rulemaking power, *id.* § 1395kkk(d)(5), detailed procedures by which Congress must either consider and vote on the recommendations or pass superseding legislation, *id.* § 1395kkk(d). In the absence of superseding legislation, *id.* § 1395kkk(e)(3)(A)(i), the Secretary must implement the recommendations as submitted to Congress and the President, *id.* § 1395kkk(e)(1).

In August of 2010, Coons and Novack, along with two members of Congress,[2] filed an omnibus facial challenge to the Affordable Care Act in the United States District Court for the District of Arizona. Coons is a citizen of Arizona, is

---

[1] IPAB also has the authority, at its discretion, to make non-binding, advisory proposals to Congress. 42 U.S.C. § 1395kkk(c).

[2] The second amended complaint included Coons, Novack, and United States House of Representatives members Jeff Flake and Trent Franks as plaintiffs. But Representatives Flake and Franks did not appeal. Unless otherwise specified, therefore, "Plaintiffs" refers to Coons and Novack only.

not exempt from the Affordable Care Act, does not have private medical insurance, and does not want to purchase private medical insurance or share his private medical history with third parties. Novack is a citizen of Arizona and a physician who manages a surgery practice that cares for patients, 12.5% of whom receive care funded by Medicare reimbursements. Plaintiffs challenge the individual mandate and the establishment of IPAB on several theories, including claims that those provisions: violate their constitutional rights; exceed Article I legislative power under the Commerce Clause, Necessary and Proper Clause, Spending Clause, and taxation power; and violate Article I's non-delegation principle. Plaintiffs also seek a declaration that the Arizona Act is not preempted by the Affordable Care Act.

Plaintiffs' challenge was one of many similar cases filed nationwide. One such case reached the United States Supreme Court. The Court reviewed the individual mandate and two other provisions expanding Medicaid coverage, 42 U.S.C. §§ 1396a(a)(10)(A)(i)(VIII), 1396c, to decide whether the provisions exceeded Article I legislative power under the Commerce Clause, the Spending Clause, or Congress' taxation power. While the Supreme Court's decision was pending, Defendants moved to dismiss all of Plaintiffs' claims, and the parties filed cross-motions for summary judgment. The district court stayed this action pending the Supreme Court's disposition.

In *National Federation of Independent Business*, the Supreme Court upheld the individual mandate as a proper exercise of Congress' taxation power, 132 S. Ct. at 2600, but struck, as exceeding Spending Clause power, the portion of the Medicaid expansion provision that withdrew all federal Medicaid funding, including funding provided for programs

predating the expansion, from states that refused to adopt the expansion, *id.* at 2606–07. Following that decision, the district court lifted the stay in Plaintiffs' case and granted Defendants' motion to dismiss all claims that challenged the individual mandate for exceeding Article I lawmaking power. The district court also held that the establishment of IPAB did not violate Article I's non-delegation principle. After receiving further briefing, the district court dismissed the remaining claims[3] and entered final judgment for Defendants. Plaintiffs Coons and Novack timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

Plaintiffs argue on appeal that the district court erred by dismissing their challenge to the establishment of IPAB and their challenge to the individual mandate as violative of Coons' substantive due process rights to medical autonomy and informational privacy and by holding that the Affordable Care Act preempts the Arizona Act. We disagree with their arguments for the reasons that follow.

## A.  Article I Non-Delegation Challenge

Novack challenges the establishment of IPAB on the ground that it violates Article I's non-delegation principle. But we first must address the threshold question whether Novack satisfies the demands of Article III for ripeness. The

---

[3] After the Supreme Court issued its decision in *Nevada Commission on Ethics v. Carrigan*, 131 S. Ct. 2343 (2011), Plaintiffs voluntarily dismissed count six of their complaint, which challenged features of the Affordable Care Act as violative of Plaintiffs Flake and Franks' First Amendment rights.

framers of Article III designed the federal courts to act retrospectively and to avoid encroaching, through the issuance of advisory opinions, on the prospective lawmaking role of the legislature. *United Pub. Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 89 (1947). "For adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions, are requisite." *Id.* (internal quotation marks omitted). This requirement has led to the doctrine of ripeness, which contains "both a constitutional and a prudential component." *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993). The constitutional component derives from Article III and, if it is not satisfied, we lack jurisdiction to reach the merits of a dispute. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

"The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Id.* at 1138. When addressing the sufficiency of a showing of injury-in-fact grounded in potential future harms, Article III standing and ripeness issues often "boil down to the same question." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 n.5 (2014) (internal quotation marks omitted). In that context, "ripeness can be characterized as standing on a timeline," and the analysis for both standing and ripeness is essentially the same. *Thomas*, 220 F.3d at 1138.

"In assuring that this jurisdictional prerequisite is satisfied, we consider whether the plaintiffs face a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement." *Id.* at 1139 (internal quotation marks omitted). A plaintiff's "injury must be concrete,

particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending. Thus, we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citations, internal quotation marks, and brackets omitted).

Novack alleges that the establishment of IPAB will certainly harm him in the future because he is an orthopedic surgeon and manages a surgery practice in Arizona that receives 12.5% of its patient care payments from Medicare reimbursements. He argues that, because IPAB is empowered to make recommendations on reimbursement rates, 42 U.S.C. § 1395kkk(c)(2)(A)(iv), his challenge is ripe because he will suffer financial harm as a result of IPAB's recommendations. Novack argues, in the alternative, that the establishment of IPAB will set in motion market displacements that will harm him financially, which he contends is sufficient to satisfy Article III.

Although it is possible that some future IPAB action might harm Novack, his allegations of future financial harm are highly speculative and are not certainly impending. *Clapper*, 133 S. Ct. at 1147. The Affordable Care Act does provide that—if the Chief Actuary makes the requisite finding—IPAB will have the discretion to recommend reduced reimbursement rates to providers, 42 U.S.C. § 1395kkk(c)(2)(A)(iv), but IPAB is prohibited from recommending a reduction until January 1, 2019, *id.*

§ 1395kkk(c)(2)(A)(iii). Novack's allegations that, because IPAB is authorized to reduce and not increase reimbursement rates, "the statute is imminently likely to decrease his reimbursements for services that he renders to Medicare patients, and otherwise affects his practice," are exactly the kinds of "allegations of possible future injury" that the Supreme Court has held are insufficient to establish injury-in-fact. *Clapper*, 133 S. Ct. at 1147. Speculative allegations with respect to a potential future reduction in Medicare reimbursement rates that are "wholly contingent upon the occurrence of unforeseeable events" are insufficient to satisfy the constitutional prong of our ripeness doctrine. *Thomas*, 220 F.3d at 1141. Accordingly, Novack's challenge to IPAB grounded on the contention that IPAB could exercise its discretion to recommend reduction in reimbursement rates some time after 2019, thereby causing him injury, is unripe.

Novack's challenge to IPAB predicated on a market displacement theory of injury-in-fact is equally unripe. In particular, Novack cites allegations in the complaint that, "*if* [IPAB's speculated reductions in reimbursement rates] are anticipated to become law," health care providers and the market *might* react negatively. (Emphasis added.) Those allegations are insufficient to establish standing under the market displacement theory of injury-in-fact. *See Barnum Timber Co. v. EPA*, 633 F.3d 894, 900–01 (9th Cir. 2011). Unlike the plaintiff in *Barnum*, who alleged that EPA regulations on one property had already affected the market and had already reduced the market value of plaintiff's property, *id.* at 901, Novack alleges only speculative future market displacement that is contingent on a series of events, including IPAB action, that has not yet occurred and may never occur. Such speculative alleged injuries present a dispute that is "not justiciable, because it is not ripe for court

review." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732 (1998). Moreover, Novack does not allege that he actually has suffered financial harm from the alleged market forces.

In sum, Novack's allegations of future injury are too speculative to satisfy the constitutional requirement of ripeness.[4] The district court, therefore, lacked jurisdiction to adjudicate the merits of Novack's challenge to the establishment of IPAB. Accordingly, we vacate the district court's judgment on this claim and remand with instructions to dismiss the claim for lack of jurisdiction.

## B. Substantive Due Process and the Individual Mandate

Coons challenges the individual mandate on the ground that it violates his right to substantive due process provided by the Fifth and Ninth Amendments. He argues that the mandate burdens directly his rights to medical autonomy and informational privacy and, in the alternative, burdens his informational privacy right indirectly by conditioning the exercise of his right not to share his private medical information on a requirement that he pay a penalty.

---

[4] Novack argues, in the alternative, that he has suffered an injury-in-fact simply by virtue of being subject to the jurisdiction of the IPAB. The Supreme Court has held that, in certain circumstances, merely being subject to the jurisdiction of a governmental entity established in violation of the Constitution confers Article III standing. *See Buckley v. Valeo*, 424 U.S. 1, 117–18 (1976) (per curiam). But IPAB has no jurisdiction over Novack or his practice of medicine. Novack's allegations that his financial interests will be affected indirectly by IPAB's future regulatory actions do not suffice to render Novack subject to IPAB's jurisdiction.

### 1. Medical Autonomy

The Supreme Court has recognized fundamental rights to determine one's own medical treatment, *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990), and to refuse unwanted medical treatment, *Washington v. Glucksberg*, 521 U.S. 702, 724 (1997), and has recognized a fundamental liberty interest in medical autonomy, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 851 (1992). Coons contends that the individual mandate unduly burdens his right to medical autonomy by "forcing him to apply limited financial resources to obtaining a health care plan he does not desire or forcing him to save his income and pay a penalty" and by "forcing him to create or risk creating an intimate relationship concerning his health and medical care with millions of non-physician intermediaries employed by health insurers, rather than directly with the physician of his choice."

In order to determine whether the individual mandate implicates Coons' rights to medical autonomy, we must examine what the individual mandate actually requires. The Affordable Care Act provides that an individual must obtain from any source, public or private, medical insurance that meets statutory minimums of coverage, 26 U.S.C. § 5000A(a); or must pay a penalty, in the form of a tax, *id.* § 5000A(b). The individual mandate does *not* require that an individual select a particular insurance plan, does *not* require that the individual use an insurance plan once purchased, and does *not* restrict an individual's right to contract for care directly with the physician of his or her choosing.

The fact that the individual mandate forces Coons to expend funds on either medical insurance or a penalty

implicates Plaintiff's economic interests only—a substantive due process right abandoned long ago by the Supreme Court. *See Ferguson v. Skrupa*, 372 U.S. 726, 730 (1963) ("The doctrine that prevailed in *Lochner*, *Coppage*, *Adkins*, *Burns*, and like cases—that due process authorizes courts to hold laws unconstitutional when they believe the legislature has acted unwisely—has long since been discarded."). As noted, contrary to Coons' contentions, the individual mandate does not force him into an intimate relationship with an intermediary insurer or preclude the doctor-patient relationship of his choice. He remains free to obtain medical insurance of his own choosing—or to obtain no insurance, but at a financial cost—and to use or not use any such insurance in selecting future doctor-patient relationships. To the extent that Coons simply wishes to remain uninsured *and* free from the mandatory payment, the Supreme Court no longer recognizes such a right as fundamental.

We thus join the Sixth Circuit in upholding the individual mandate against a substantive due process challenge grounded in medical autonomy. *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588 (6th Cir. 2013).

### 2. Informational Privacy

The Supreme Court has recognized a fundamental privacy right in non-disclosure of personal medical information. *Whalen v. Roe*, 429 U.S. 589, 599 (1977). But, "the right to informational privacy is not absolute; rather, it is a conditional right which may be infringed upon a showing of proper governmental interest." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 551 (9th Cir. 2004) (internal quotation marks omitted). In order "to determine whether the governmental interest in obtaining information outweighs the

individual's privacy interest," we weigh the following factors: "(1) the type of information requested, (2) the potential for harm in any subsequent non-consensual disclosure, (3) the adequacy of safeguards to prevent unauthorized disclosure, (4) the degree of the need for access, and (5) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access." *Id.* at 551.

Coons contends that the individual mandate burdens impermissibly his fundamental right to privacy in his medical information by requiring him to provide medical information to third-party insurance providers. He speculates that insurers will "solicit sensitive information from customers" in order to set risk premiums. He also asserts that such a disclosure would make his medical information available for warrantless government seizure. But Coons has not alleged that he has applied for medical insurance or that any third party has requested that he disclose his medical information as a condition precedent to obtaining the minimum required coverage.[5] Those omissions frustrate our ability to weigh the relevant factors delineated in *Tucson Woman's Clinic*.

Because Coons' challenge would require evaluating a speculative intrusion, his challenge is prudentially unripe.[6] *See San Luis & Delta-Mendota Water Auth. v. Salazar*,

---

[5] Indeed, at oral argument, counsel represented that Coons has no intention of obtaining insurance.

[6] Because Coons' unconstitutional conditions claim also rests on the contention that the penalty constitutes an undue burden on his ability to exercise his informational privacy rights, that challenge, too, is prudentially unripe.

638 F.3d 1163, 1173 (9th Cir. 2011). The Supreme Court has held that prudential ripeness depends on two factors: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967). Here, as noted, Coons has not alleged that any third party has sought private medical information. Because we have no way to know who might seek what kind of information, further factual development would "'significantly advance [our] ability to deal with the legal issues presented.'" *San Luis & Delta-Mendota Water Auth.*, 638 F.3d at 1173 (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)). Moreover, Coons does not contend that he is currently at risk of being forced to disclose information protected by his substantive due process right, so a holding of unripeness would work no hardship against him. Judicial resolution of this issue should await a concrete dispute. We hold, therefore, that the district court did not err in declining to reach the merits of Coons' informational privacy claim for lack of ripeness.[7]

## C. Preemption

Finally, Plaintiffs appeal the district court's holding that the Affordable Care Act preempts the Arizona Act. We evaluate under the Supremacy Clause, U.S. Const. art. VI, cl. 2, whether the Arizona Act, as a state law, is displaced by the Federal Affordable Care Act.

---

[7] Plaintiffs did not ask the district court for leave to amend, nor have they argued on appeal that the district court erred in dismissing their claim without affording them leave to amend their second amended complaint. Therefore, the district court did not err in dismissing Plaintiffs' claims without leave to amend.

In November of 2010, eight months after the Affordable Care Act became law, Arizona voters amended their state constitution through the Arizona Act to provide, in pertinent part:

> A.  To preserve the freedom of Arizonans to provide for their health care:
>
> 1.  A law or rule shall not compel, directly or indirectly, any person, employer or health care provider to participate in any health care system.
>
> 2.  A person or employer may pay directly for lawful health care services and shall not be required to pay penalties or fines for paying directly for lawful health care services.  A health care provider may accept direct payment for lawful health care services and shall not be required to pay penalties or fines for accepting direct payment from a person or employer for lawful health care services.
>
> B.  Subject to reasonable and necessary rules that do not substantially limit a person's options, the purchase or sale of health insurance in private health care systems shall not be prohibited by law or rule.

C.  This section does not:

. . . .

4.  Affect laws or rules in effect as of January 1, 2009.

5.  Affect the terms or conditions of any health care system to the extent that those terms and conditions do not have the effect of punishing a person or employer for paying directly for lawful health care services or a health care provider or hospital for accepting direct payment from a person or employer for lawful health care services.

D.    For the purposes of this section:

. . . .

5.  "Penalties or fines" means any civil or criminal penalty or fine, tax, salary or wage withholding or surcharge or any named fee with similar effect established by law or rule by a government established, created or controlled agency that is used to punish or discourage the

> exercise of rights protected under this
> section.

Ariz. Const. art. XXVII, § 2.

"The question whether a certain state action is pre-empted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 96 (1992) (internal quotation marks and brackets omitted).

The Affordable Care Act presents a classic case of preemption by implication because the Arizona Act "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 98 (internal quotation marks omitted). The Supreme Court has recognized that the individual mandate is a proper exercise of Congress' Article I taxing power, *Nat'l Fed'n of Indep. Bus.*, 132 S. Ct. at 2600, and we affirm the constitutionality of the Affordable Care Act again today. The Arizona Act provides that its citizens may forego minimum health insurance coverage and abstain from paying any penalties, Ariz. Const. art. XXVII, § 2, which is exactly what the individual mandate requires. The Arizona Act thereby stands as an obstacle to Congress' objective to expand minimum essential health coverage nationwide through the individual mandate, 26 U.S.C. § 5000A, and is, therefore, preempted under the Supremacy Clause. *See Gade*, 505 U.S. at 103 ("A state law . . . is preempted if it interferes with the methods by which the federal statute was designed to reach [its] goal." (internal quotation marks omitted)).

## CONCLUSION

We affirm the district court's holding that the individual mandate does not violate Plaintiff Coons' substantive due process right to medical autonomy, and we affirm the dismissal, for lack of ripeness, of Coons' challenge to the individual mandate for violation of his substantive due process right to informational privacy. We also affirm the district court's holding that the Affordable Care Act preempts the Arizona Act. Finally, with respect to Plaintiff Novack's challenge to IPAB, we vacate the district court's decision on the merits of the claim and remand with instructions to dismiss it for lack of jurisdiction.

**AFFIRMED in part, VACATED in part and REMANDED with instructions.** Costs on appeal shall be awarded to Defendants-Appellees.